May it please the Court, my name is Michelle Hansen, I represent the Suquamish Tribe, and we are the appellants in a sub-proceeding that is part of the long-running U.S. v. Washington case. Here the question is whether or not the proponents, Upper Skagit and the Swinomish Tribe, have proved any kind of ambiguity in Judge Bolt's 1975 determination of the Suquamish Usual and Custom Fishing Grounds. Were that he intended something other than what appears to be an unambiguous mean? Yes, that's what it comes down to. And the Suquamish Tribe believes that the district court erred in replacing Judge Bolt's intent in that decision with its own redetermination and re-adjudication of the original evidence. I don't understand why we need ambiguity. We're not construing a contract, there's no parole evidence rule, we're not construing a statute, we're not deciding whether to look at legislative history or some such thing. We're reading a decree, and a decree is just an order in a particular case, and I don't understand why we can't read materials in the case to determine what the judge meant. I think the importance here is that there's a string of decrees and orders, but the determination of a tribe's Usual and Custom Fishing Grounds is quite significant because it decides where the tribe can fish within the case area of Puget Sound. What he said was Puget Sound, and there's some uncertainty about what that means when you're at the Strait of Juan de Fuca or at the Strait of Georgia, I guess. Is that the two ends of it? I think that the district court was correct in its order when it said that Judge Bolt had, in fact, defined Puget Sound. And it means all the salt water between those two straits, right? Between the ocean, going in from Tatoosh Point, and all inland waters to the Canadian border. And the area here, the Saratoga Passage and the Skagit Bay, it looks to me like they're both salt water and they're in Puget Sound. That's correct. So the question is whether or not then the determination that Judge Bolt made at the Suquamish UNA, which is the marine waters of Puget Sound from the northern tip of Vashon, which is south of Seattle, up to the Canadian border, includes that water. And it should. It's not ambiguous. Counsel, who has the burden of proceeding, the burden of proof in this case? I think that the proponents, Upper Skagit and Swinomish, have the burden to show either that there's something in the determination that's ambiguous, either patently or latently. That's what the ambiguity versus did the judge intend something other than the apparent meaning means. Well, Judge Bolt himself used Puget Sound in a whole bunch of different ways. There's no evidence that I can see in the 1975 record that puts any geographic markers on the east side of Puget Sound to the Suquamish UNA. And so I guess there's no evidence that the Suquamish ever fished east of Whitby in ancient, in treaty times or post-treaty times. So given those at least three things, I think there's some more, but that's at least three things that I would appreciate your telling me why the district court didn't get it right given those facts. I think that the task of the court 31 years after the fact and after the final judgment is to interpret Judge Bolt, not to look at the evidence again and re-adjudicate. So I would direct the court to the evidence at 179 through 180, 89, 80, somewhere in there. Which is what, Dr. Lane's testimony? No, it's the hearing on April 10th, 1975, after the tribes give their evidence. And at that point, the state argues to Judge Bolt that Suquamish in particular did not meet its prima facie case. And he says exactly what the upper Saskatchewan and Swinomish tribes are claiming now, many years later, which is that there is no evidence that the there are inferences on inferences and that Dr. Lane's conclusions are speculation. And therefore, that Suquamish had not proven a prima facie case and didn't have an entitlement to fish. What she said was that occasionally in the, in one season or other, I'm sorry, I don't remember now. Anyway, occasionally the tribe would travel as far as, as far as, as far as the Fraser River to fish. But there's no evidence that I'm aware of that ever fished east of Whitby. And that's really the question, isn't it? I think the question for the Court and the task of this Court and of the district court is to interpret Judge Bolt, not to the agency that has to interpret him. I understand, but we're, we're, we've already agreed he used the word, he used Puget Sound to mean lots of different things. So when he used it in connection with your UNA, which is like north of Vishon Island, I mean, from Vishon Island, drawing a line up to, which can mean either one of two things. I mean, that in and of itself can mean lots of different things. It can be a horizontal line or it can be a vertical line. I think that the, the district court correctly ruled that Judge Bolt did in fact define Puget Sound. And that's in Finding of Fact 164 in Conclusion of Law 7. I realize that that's what you think, but, but he went further than that and based on the three or four things I mentioned, concluded that Judge Bolt can't have meant that, because that exhibit meant, didn't purport to define Puget Sound for any purpose other than the exhibit. And it's also the case area. But I think what's important is if you look at after the, the state made its argument to the court, Judge Bolt took a recess and came back and said, I reject your argument and I find that there is a prima facie case by the Suquamish tribe. And that it includes that they went on a usual and a custom trips, it was their accustomed area, to at that point in the April 10th hearing, a bench ruling that they could fish for herring in the northern Puget Sound. And then what's important is then a week later, he issues his written ruling where he reconfirms this. He confirms in Paragraph 2, and that's, that's in the ER 113 on. He confirms in Paragraph 2 that the tribes, including Suquamish, had the right to fish for herring, engage in the herring fishery in northern Puget Sound. And in Paragraph 5, outlines the Suquamish UNA. Most importantly, in Paragraph 8, Judge Bolt says, I find each of the tribes, and that includes the Suquamish, made a prima facie case for what I state is their usual and custom fishing grounds. Then offers to the parties, if you want a full evidentiary hearing, to make a request, or otherwise to appeal. And none of the parties here asked for that then. It's a final judgment. And I think what's important is that if you allow courts, the district court, to go back and look at whether or not there's sufficiency of evidence, you've just taken away the concept of the finality of judgment. And so I think the task needs to remain, what did Judge Bolt intend? And what did he say? And particularly the two parts of the April proceeding tell you what he intended. Counsel, you're down to about a minute. You may wish to reserve. Yes, I'd like to reserve that minute, please. You may do so. We'll hear from the upper Skagit interests. I have two names here. Would you indicate how you're going to share your time? Yes, Your Honor. May it please the Court, my name is Harold Chesnin, representing the tribe. With me is James Janetta from the Swinomish Indian Tribal Community. It is my intention to take about four minutes and then have Mr. Janetta have the opportunity to speak. You have ten total, so any way you want to use them is fine. Your Honor, I think the Court has clearly seen that there are actually two tests, two potential tests in the Muckleshoot 1 case. There is an ambiguity test, but there's also what was the intent of the judge at the time. What was the evidence? In this case, Suquamish asserts that it is entitled to fish in Saratoga Passage and Skagit Bay, even though there's absolutely no actual evidence as determined by, not only by the record, but by Judge Martinez. As I understood it, as you say, our task is to figure out what Judge Bolt meant and what he held. And he said, he said Puget Sound, and he seemed to use it to mean the salt water, and both sides of Whidbey Island are in salt water. Now there was little evidence or no evidence that the Suquamish tribe fished in these locations. There was also no evidence that they didn't, to be realistic. The evidence here is pretty lightweight all around. Basically you've got an anthropologist's report based on reading some old-timers' reports and talking to some Indians about what they've heard their ancestors did. It's really thin. If you look at the practicalities, I can't see why they wouldn't have fished there sometimes, because if you're in a canoe, it's kind of hard to tell where you are. You can't look down on things the way you can in a plane. And all the islands look sort of alike, and sometimes the wind and current take you to one side, sometimes the other. Why not drop a line? Actually, Your Honor, Dr. Lane, who provided reports for all the tribes and did extensive research and provided extensive reports, provided all the evidence that was relied upon. But taken in the context of that evidence, the distinction that Judge Martinez finds, which is fishing in certain seasons and traveling in other seasons, means that the fishing effort of the Suquamish tribe, as found by Judge Bolt and as contained in the record and analyzed by Judge Martinez, the fishing effort was not in Saratoga Passage in Skagit Bay. It was much further south, and the travel effort, which would have enhanced the process, was on the west side of Puget Sound, where all of Judge Bolt's descriptors were. We know this for several reasons, because Suquamish relied heavily upon Dr. Lane's testimony. And as Judge Martinez cites in his careful and considered analysis, as he shows, the testimony that Dr. Lane, using a map, relied upon, were for two districts to the west and not for the fishing district to the east. Is it true that we reviewed De Novo and not It is true that you reviewed De Novo, but I would suggest that, just as the Ninth Circuit determined in the case of Nehmer versus U.S. Department of Veterans Affairs at 494-Fed3-846, I would suggest that because of Judge Martinez's relationship to this decree, to U.S. v. Washington. It's handled a number of these cases. He makes decisions in this all the time. I'm saying that there's some deference that should be given to his decision. Well, we're not allowed to if we have to review De Novo. Well, I think that you reviewed De Novo, but that doesn't – I think as you stated in the prior case that Absolutely, if you reviewed De Novo. I think, as you stated in the prior case, that deference doesn't mean that you don't review De Novo. It's just how you view the evidence and the manner in which Judge Martinez presented the argument when the ambiguity issue, the ambiguity issue, is one of the stools that he could have used, but he carefully analyzed that that wasn't where this case comes out. This case comes out on the facts before Judge Boldt. I couldn't figure out why one thing was especially more likely than another to have been Judge Boldt's intention. And when I look at the evidence, I can't see why the Indians wouldn't sometimes be on the east side instead of the west side just because of the wind. When you canoe, sometimes you wind up on the wrong side of the island when you don't even mean to. The other thing is they're not traveling by 737 where you can't stop for a bike. They're taking long journeys by canoe. You'd think drop a line now and then and get some fish. Minimal fishing is not the standard, particularly fishing while traveling north. Was there any evidence they didn't fish there? There is absolutely no evidence that they did fish. And that's what the standard under Muckleshoot I requires, that there must be at least some actual evidence. There is no actual evidence here. Why don't we just look at this in terms of what Judge Boldt defined Puget Sound to be? Because that's not the end of the process. That's only the beginning of the process as analyzed by Judge Martinez. The end of the process is Puget Sound includes all salt waters, which would include Skagit and Saratoga. Where do we go then? That's only the first test with respect to the ambiguity. Okay, but suppose we resolve the test that way. Then what do you do? Then you have to look at the actual intent of the judge as determined from the facts. The intent of what, though? The intent in defining the scope of Puget Sound? Whether or not this was a usual and custom fishing area. If there are no facts, if there are no facts to support the proposition that this was a usual and custom fishing area, then the judge's intent, as Judge Martinez said, could not have been to provide it as a fishing area for the Suquamish tribe. Well, who has the burden of proof? You heard my question to Ms. Hanson. Who has the burden of proof in this case? In this case, the upper Skagit and Swinomish bear the burden of proof. But in the original case, to put facts into the record so that the judge could analyze those facts, that was the burden there. Pardon? You bear the burden of proof to prove that the Suquamish Indians did not fish on the east side of Woodby Island. Is that correct? Yes, we do. I believe we have shown that by a lack of facts. It carries the burden. Let me ask my questions one at a time so I don't get mixed up. I'm sorry. You have the burden of proof to prove that the Suquamish did not fish on the east side. Is that right so far? We have the burden of proof to prove that the judge's intent was not to include this area within the fishery. Yes, you're right. That's an apt correction. Now, as I understand it, when we look at his intent and look at the evidence that was before him, there's basically no evidence either way on whether the Suquamish fished on the east side of Woodby Island. But under the Muckleshoot 1 test, no evidence either way is actually positive evidence that they did not fish. That's the point. The absence of evidence is what Judge Martinez relied upon to determine that it could not have been the intent of Judge Bolt to set this area aside as a usual and accustomed area. Your Honor, I feel the need of yielding some time to Mr. Giannetta. Thank you very much. You may do so, counsel. I'd like to go straight to some of the questions that have been raised, and particularly with regard to who has the burden as to what. The burden was on Suquamish to establish where its usual and accustomed fishing areas were. That burden required evidence of regular and frequent trout fishing in the area involved. So you can see that the salt waters east of Woodby are within Puget Sound. Absolutely not. And in fact, the ordinary meaning of the term Puget Sound, which is quite clear from the record in this case, Woodby Island is the eastern boundary of Puget Sound, and in common parlance, it refers only to the waters from Admiralty Inlet South. All three of the experts that were used in this case, including the Suquamish geographic expert, agreed on that point. So we start with the fact that the ordinary language does not generally include Saratoga Passage and Skagit Bay and Puget Sound. What I will concede is that Judge Bolt sometimes used the term Puget Sound, as JX2A, the Joint Biological Report, did, as a shorthand for the inside waters as opposed to the coastal waters of Washington, an appropriate distinction when you're talking about fisheries management. But this case is not about fisheries management. This case is about what the tribes did, and what they did in 1855. Is the practical significance of this, incidentally, whether the Suquamish get to fish on the east side of Woodby Island and in that passage, along with all the other Indians, or whether they're excluded? Yes, Your Honor. That is the practical consequence. The method of proving UNA was through Barbara Lane's reports. Almost everybody's UNA was the area of travel. She described the area of travel using a map, which is on page 45, I believe, of our brief, but it's also in the record. And because the state was concerned about the area of travel, because of the thinness of the record on this issue, the state's attorney was very adamant in having that area of travel defined. And he used that map to define that area of travel, and Judge Lane identified that area of travel as areas one and two on that map. Areas one and two are on the west side of Woodby Island, and Saratoga Passage and Skagit Bay are on the east side of Woodby Island. Then, when the judge ruled on the contested issues from the bench, prior to entering the written findings in the case, and the court ruled on this issue in the same terms, the court said, and this is in the ER at 088 and 089, the court finds that a prima facie showing has been made that travel and fishing through the north sound areas, that is, areas one and two designated by the state, was frequent and regular. Frequent and regular is the language that finds the UNA. This record has no evidence whatsoever that Suquamish even entered those waters, let alone that they fished there frequently and regularly. Thank you, counsel. Your time has long expired. Ms. Hanson, you have some reserve time. I guess I should ask if you have any questions, or whether you want me to proceed. Well, you've heard the arguments made by opposing counsel. I think we'd be interested in your responses. There are a number of responses. I think one of the responses is that, as Judge Reinfeldt said, the evidence is sparse, because people weren't writing things down back in 1855. However, Barbara Lane did say in her report that the Suquamish fished regularly for salmon at the mouth of the Snohomish River, which is on the east side and south of Whidbey Island. Way south. Pardon? Way south. No, it's not way south. You have a passage comes in, and it's by Everett. The Snohomish River is by Everett. And that Dr. Lane said that the Suquamish fished in adjacent marine waters. What about this area one and area two business? In the bench ruling on April 10th, the court was dealing with the herring fishery, and that's when he was talking about area one and two. A week later, he's talking about both the herring fishery, which he deals with in paragraph two, and then he goes on to paragraphs three through six, where he goes through the determinations, which, if you look at them, are broader, not only for Suquamish, but also for Swinomish, for instance, who, at the time of April 10th, Judge Bolt said, yes, they get to fish in one and two also. So he's dealing with two different things at the same time. One is the herring fishery that was imminent, and then also the determination of where these tribes could fish regularly and did fish regularly. I think that what's important is to note that the point being with this, if there's no evidence, what happens? I think in earlier cases, the Lummi case, there's four cases that are relevant here, and in the Lummi determination, the argument was made that they didn't fish in Admiralty Inlet, because that was never pointed out, and the Ninth Circuit Court said, you know what, they had to get from point A to point B. So even though there's no mention of Admiralty Inlet, that doesn't mean, as Judge Reinfeldt said, that they didn't fish there or they did fish there. It's essentially, there is no ruling on that in terms of saying that it goes one way or the other. Well, is there a presumption, and who gets the advantage of the presumption? I think that in Suquamish's view, because the case area is the salt water of Puget Sound, and they were traveling in all areas, I think the presumption goes to the Suquamish tribe. Thank you, Counsel. Your time has expired. Before submitting this case, and this is not attributable to either side's time, it occurred to me, I've been on some of these cases before, as you all know, but the question arises, this case started as United States versus Washington in 1974 or thereabouts. We're well into 30, 35 years of continuous litigation. Could I ask a person from each side to just tell me, what is your forecast in terms of when this litigation will terminate? I'd like to add the question of whether you're really going for the record, because you're very close to the record. My question is along the same lines. I've wondered, why would you want us deciding which Indians get to fish where? Why don't the Indians set up a joint tribunal to decide these things and keep us out of it? All right. Either side. Ms. Hanson? I think whether or not it continues for your, the judges that come after you, may be partly in what you decide today, because there's got to be a finality of judgment somewhere. And if the court decides that, in fact, you can go back over the evidence and find that there is a insufficiency of evidence, something that the upper Skagit or the Swinomish should have appealed back in 1975. And if you can say that they can do this 31 years later, then we're going to be here for a long time. So I think that's the policy issue that you're facing. Let me ask specifically, this case does not involve Indian versus non-Indian. It's such that they're in play. There's an interpretation of a decree, certainly. But which way does that point in terms of bringing an end to the continuous proceeding? That's a very difficult question. And I think that part of it is that we all, all the tribes are parties to this lawsuit. And without it, we may not have a forum. And I think that the Supreme Court has said that we need four forums. All right. Thank you, counsel. Someone from the other side, from the upper Skagit side? There have been many proceedings and sub-proceedings in U.S. v. Washington, but this is one that comes before the court because of new behavior by Suquamish. From the time of the U.N.A. finding until 2004, Suquamish had amended its regulations not to fish in Skagit Bay in Saratoga Passage in response to Judge Bolt's finding, and for 29 years did not fish there. In 2004, Suquamish began fishing in Saratoga Passage, and this sub-proceeding was instituted. And I believe this sub-proceeding would be before the court, regardless of whether the court had a proceeding that fits under the court's supplemental jurisdiction under 28 U.S.C. 1367. But we do have, in recent years, pretty clear doctrinal commands from the Supreme Court of the United States that equitable jurisdiction is not meant to continue in perpetuity, that there has to be an end to the proceeding. Now, there will be future disputes, but why can't those be considered one against the other in a separate proceeding? Well, Suquamish and Upper Skagit are part of the nine tribes that are going to be arguing that very point in the next proceeding. I'm not going to be arguing it, so I don't want to repeat that argument. Well, we'll give them time to comment as well. But from our point of view, because the tribes possess sovereign immunity, there is really no forum for litigation of these kinds of disputes that are interpretations of what the tribal treaty right is and adjustments among themselves. So that if we don't have a forum like this in which to respond to Suquamish's incursion into an area that they haven't fished in before where they don't think they have UNAs, we may have nowhere to really resolve this. I think you just answered my question, but I want to make sure. As I understand it, what you're saying is either this case goes on as long as the United States goes on, or one Indian tribe can't sue another because the defendant would assert its sovereign immunity and there'd be no way to settle the matter. That is one of the major problems. Is that what you're saying? That is one of the major problems. So as long as there's a United States, there's going to be... West versus Washington. I'd hate to predict that far in the future, but it is one of the... You talked about the kind of tribunal I mentioned. I just can't see why they wouldn't want to settle internal Indian affairs themselves. We have at times, Your Honor, yes. All right, thank you, Counsel. I saw someone, Mr. Chesnin, did you have something further to say? Just briefly, Your Honor, Upper Skagit is a small tribe, a terminal area tribe. That means all the tribes fish in front of it. In order to sustain its treaty right, again, as a sovereign, as a sovereign with other sovereigns, there's the necessity of having a forum to go to. The tribes have acted. Judge Rothstein asked this very question when she came on to the U.S. v. Washington, and after careful consideration, she decided that we had to continue this jurisdiction. But the tribes have over the years worked much more closely together. And these issues, there are a lot more issues that come before the district court or these courts. I know it may be small comfort to this panel, but it is getting better. But there is an ultimate need to protect this tribe and every other tribe's sovereign right to exercise its treaty rights. And the only place we can do that is here. All right. Thank you, counsel. With your indulgence, may I ask Ms. Hanson a question? Sure. Has anything happened in the district court with the Tulalip-Suquamish case that was up here this time last year? We're still waiting for a decision. And the Suquamish have filed a motion to dismiss, renewed that motion to dismiss. But we haven't heard. And I don't know whether the district court is perhaps waiting for some instruction here. Because it raises essentially the same, you know, the same definitional question. That's why I was just wondering whether it was on its way back up here yet. But it isn't. It will likely make its way back up here, no doubt. But no decision yet at the district court is what you're saying. And in answer to Judge Weinfeld's question, I think the problem is one that Judge Rothstein did mention in the 97-1 case when she was a district court judge looking at that. And she said, you know, as a judge, I have to look at what was happening at treaty time. And that's what I base my decision on. However, what's coming before the court has to do with commercial interests and the tribes competing against each other, as they did at treaty time for fish, to sell fish to harvest. And so that's part of the reason why while we talk and the tribes get along on some issues, just like they did, you know, 150 years ago, they still fight among each other. Thank you, counsel. The case just argued will be submitted for decision. And we will hear argument now in the last case on the docket today.
judges: O'scannlain, Rymer, Kleinfeld